**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 14-40005-DDC** |
| **TERRIE ADAMS (06) and
CRAIG BROOMBAUGH (10),** | |
| **Defendants.** | |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the court on defendant Craig Broombaugh's Motion to Compel (Doc. 983) and Motion for Subpoenas Under Federal Rule of Criminal Procedure 17(b) and 17(c) (Doc. 984). The government responded to these motions (Docs. 993, 994). For reasons explained below, the court grants in part and denies in part defendant's motions.

The following DEA email chain serves as the basis for defendant's motions. In March 2012, Liquan Wong, the chief of the Office of Diversion Control (ODE)[1] Data Analysis Unit, sent an email to David Rees. Mr. Rees worked in the Drug Enforcement Agency (DEA) Forensic Science (SF) department. In his email, Mr. Wong asked Mr. Rees for "SF's comments on the chemical structure evaluation" of certain substances. (Doc. 983-1 at 12). Among these substances was UR-144. UR-144 is one of the substances listed in the Second Superseding Indictment in this case. Doc. 333.

On April 6, 2012, Jeffrey Comparin, a laboratory director at SF, sent an email to Scott Oulton, an Associate Deputy Assistant Administrator for DEA's Office of Forensic Science. Mr.

---

[1] This department is now known as the DRE, but, for consistency with both parties' filings on this issue, the court will continue to use the acronym ODE.

Comparin copied other DEA personnel on the email.  In it, Mr. Comparin relayed that "Senior Research Chemist Arthur Berrier has technically reviewed" the substances identified in Mr. Wong's email, and he has concluded that UR-144 and JWH-018 are not substantially similar in structure.  Doc. 983-1 at 10.

Some materials presented with defendant's motions seem to suggest that UR-144 was listed on some aspect of ODE's website as a controlled substance analogue despite Dr. Berrier's conclusion.  Indeed, Lance Kveto, the Chief of Laboratory Operations Section, sent an email to Mr. Oulton highlighting this assertion.  The email read:  "SF . . . declined to officially opine on UR-144.  However, it is now listed on ODE's website . . . In case you're curious, Dave is keeping a running list."  Doc. 983-1 at 14.  Mr. Kveto copied Mr. Comparin and David Rees on his email.  Mr. Kveto sent another email to Mr. Outlon and Mr. Comparin stating, "Same recurring issue.  Up to you and SF if we wish to pursue and discuss further.  I'm hitting a brick wall at our level."  Doc. 983-1 at 15.  Mr. Oulton replied "I had the same question."  Doc. 983-1 at 15.  Mr. Comparin also replied, asking, "Why didn't we opine in accordance with the analogue committee protocol?"  *Id.*

Defendant seeks a motion compelling the government to produce documents referenced in these emails.  And, defendant seeks subpoenas for the DEA personnel referenced in the emails to testify as witnesses.

I.      **Defendant's Motion to Compel (Doc. 983)**

Defendant seeks an order compelling the government to produce three documents that he believes existed at the Drug Enforcement Agency (DEA) around April 2012.  First, defendant seeks a document describing the Analogue committee protocol for determining that a substance is an analogue.  Second, defendant seeks an internal list of substances that the DEA has

2

concluded were analogues.  Finally, defendant seeks the "running list" referenced by "Dave" at the DEA, which purportedly tracked substances added to the DEA analogue list in violation of analogue-committee protocol.

Defendant contends that these documents are material to his defense.  Defendant asserts that his experts need to know and understand the DEA's methodology for classifying substances as analogues in order to opine on its sufficiency.  And, defendant contends that he is entitled to inquire whether the DEA skipped steps in its methodology when it classified UR-144.  Defendant also contends that the information is material to his "lack of knowledge" defense, because if DEA personnel disagreed whether UR-144 has a substantially similar chemical structure to a controlled substance, it makes it more likely that he did not know whether the substances had substantially similar chemical structures.

In contrast, the government contends that defendants are not entitled to the documents because defendant has not shown they are material.  First, the government contends that the documents are not material because the ODE, not the SF department, is the ultimate authority on whether a substance qualifies as an analogue.  Second, the government asserts that the documents are not material because whether UR-144 is listed on a list of analogues is not relevant to whether defendant violated 21 U.S.C. § 813, the Controlled Substances Analogue Act (CSAA).  Also, the government asserts that even if defendant could demonstrate the materiality of the documents, the government does not possess them to produce.  Finally, the government contends that the documents are protected by the deliberative process privilege.

The court grants defendant's Motion to Compel the DEA documents.  The court finds that the documents are material to the defense.  Title 21 U.S.C. § 802(32)(A) defines a controlled substance analogue, in part, as one "the chemical structure of which is substantially similar to the

chemical structure of a controlled substance." And, under binding precedent, the government must prove beyond a reasonable doubt that defendant *knew* the substances listed in the indictment had a "substantially similar chemical structure" to a controlled substance. *See McFadden v. United States*, 135 S. Ct. 2298 (2015); *United States v. Makkar*, 810 F.3d 1139 (10th Cir. 2015). So, while UR-144's placement on a purported list as a controlled substance analogue does not determine defendant's culpability under the CSSA, what defendants knew or did not know about UR-144's chemical structure is a central issue in this case. If sophisticated chemists at the DEA disagreed over UR-144's chemical structure and whether it was substantially similar to that of a controlled substance, their disagreement—if indeed they disagreed—may make it less probable that defendants knew the answer to this central question. This is all that Fed. R. Evid. 401 requires.

The court also has significant reservations about the government's argument that the deliberative process privilege shields these DEA chemists from questioning. After all, the government has chosen to designate as its trial experts chemists who routinely participate in the deliberative process purportedly protected by this privilege. But, even assuming that their deliberations once were protected in the fashion that the government contends, the government waived that privilege when it disclosed the DEA emails during other prosecutions. *See United States v. $177,844.68 in U.S. Currency*, Nos. 13-cv-100, 12-cv-947, 2015 WL 4227948, at *3 (D. Nev. July 10, 2015) (citing *United States v. Fedida*, 942 F. Supp. 2d 1270 (M.D. Fla. May 1, 2013)).

Finally, the government asserts that none of this matters because the documents sought by defendant's motion do not exist. This may or not be the case. To state an obvious existential truth, the government need not produce documents that do not exist. But the government's

assertion that the documents do not exist does not end the dispute.  Defendant deserves to cross-examine DEA witnesses on this question and try to persuade the jury that the documents indeed exist.

In sum, the court grants defendant's Motion to Compel production of the three documents placed at issue by defendant's motion.  If they exist, the government must produce them.

## II.    Defendant's Motion for Subpoenas (Doc. 984)

Defendant also seeks subpoenas for the following DEA witnesses under Fed. R. Crim. P. 17(b):  Lance D. Kveto, Scott Oulton, Jeffrey H, Comparin, David K. Rees, Arthur L. Berrier, and the custodian of records at the DEA.  Defendant contends that testimony from these witnesses is necessary to present an adequate defense.

### A.  Dr. Berrier

The government asks the court to deny defendant's Motion for Dr. Berrier because he cannot overcome *Touhy* regulations.  The *Touhy* regulations refer to regulations a federal agency may establish for disclosing information under the Housekeeping Act, 5 U.S.C. § 301.  The Supreme Court upheld these types of regulations in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  The Department of Justice's *Touhy* regulations are outlined in 28 C.F.R. § 16.26.  The regulations provide that in "deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider" whether such disclosures are "appropriate under the rules of procedure governing the case or matter in which the demand arose," and "appropriate under the relevant substantive law concerning privilege."  The government contends that both criteria require the court to deny defendant's motion to subpoena Dr. Berrier.

First, the government contends that Dr. Berrier does not meet the substantive criteria of Fed. R. Evid. 702 to qualify as an expert witness and, even if he did, his testimony will be cumulative and misleading, and thus excludable under Rule 403.  Second, the government contends that defendant is merely using Rule 17 to conduct a general fishing expedition.  Third, the government contends Dr. Berrier's testimony is protected under the deliberative process privilege.  Finally, the government asserts that it could not authorize Dr. Berrier's testimony without violating 5 C.F.R. § 2635.805.  None of the government's arguments persuade the court.

The government plans to call DEA expert witnesses to testify that substances listed in the indictment—including UR-144—meet essential components of the statutory definition of a controlled substance analogue.  Defendant is entitled to question a member of the same agency who, it appears, may have dissented from that opinion about a substance placed at issue by the indictment.  The government also contends that Dr. Berrier's testimony would mislead the jury because he works for the DEA, but he does not work for the department of the DEA that makes the "substantially similar" determination.  Indeed, the government contends that the ODE alone is responsible for evaluating drugs and is the final word on whether a substance has a chemical structure substantially similar to a controlled substance.  This apparently escaped ODE's understanding, for it was ODE, as part of its evaluation, who solicited the opinion of the SF office where Dr. Berrier worked.  Thus Dr. Berrier's testimony is relevant, and it will not be unduly cumulative or misleading so as to outweigh its probative value under Rule 403.

Also, like the documents discussed above, the court is not convinced that the deliberative process privilege applies to Dr. Berrier's testimony.  But even if it does, the government has waived this privilege.

The government also contends 5 C.F.R. § 2635.805 bars Dr. Berrier from being subpoenaed to testify.  But federal district courts consistently "have rejected the assertion that 5 C.F.R. § 2635.805 bars federal employees from being subpoenaed to provide otherwise admissible expert opinion testimony."  *$177,844.68 in U.S. Currency*, 2015 WL 4227948, at *6 (citing *Dean v. Veterans Admin. Regional Office*, 151 F.R.D. 83 (N.D. Ohio 1993); *Young v. United States*, 181 F.R.D. 344 (W.D. Tex. 1997); *Massey v. United States*, 2013 WL 960273 (S.D. Miss. 2013)).  The court now joins this line of cases refusing to recognize 5 C.F.R. § 2635.805 as a separate privilege allowing the government to shield employees with relevant information from being called as witnesses.  *See $177,844.68 in U.S. Currency*, 2015 WL 4227948, at *7.

Finally, the government contends that defendant cannot overcome the burden imposed by the *Touhy* regulations because Dr. Berrier cannot show a substantial need for the evidence.  The court disagrees.  While defendant has hired his own expert witnesses to testify about the substances in this case, Dr. Berrier's opinion that UR-144's chemical structure is not substantially similar to JWH-018 is relevant, and defendant should be able to question him as part of his defense.

### B.  The Other Three DEA Employees

However, the court does not grant defendant's motion to subpoena all the witnesses he requests.  The court finds that defendant is entitled to subpoena Mr. Comparin, who sent the email referencing the DEA protocol, in addition to Dr. Berrier.  The showing made by defendant's motion does not meet the standard necessary to compel appearances by Mr. Kveto, Mr. Oulton, or Mr. Rees.  Those witnesses are collateral to the issues justifying Dr. Berrier and

Mr. Comparin's appearances and they are, at most, cumulative.  The court thus grants defendant's Motion for Dr. Berrier and Mr. Comparin but denies the remainder of his motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Compel (Doc. 983) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion for Subpoenas (Doc. 984) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 23rd day of February, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**
